**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hostnut.Com, Inc., an Arkansas corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>Go Daddy Software, Inc., an Arizona corporation, et al.,<br><br>        Defendants. | No. CV05-0094-PHX-DGC<br><br>**ORDER** |

Defendants have moved for summary judgment or, alternatively, to dismiss Plaintiff's complaint for failure to provide discovery. Dkt. #40. For the reasons set forth below, the Court will grant summary judgment on Plaintiffs' claims, deny summary judgment in favor of Defendants' claims, and deny Defendants' motion to dismiss.[1]

**I.  Background.**

Defendant Go Daddy owns the domain name registration for Go.Daddy.com. On February 2, 2004, Plaintiff Hostnut.com, Inc. and its owner, John La Tour (collectively "Hostnut"), purchased the domain name "updaddy.com." On November 22, 2004, Go Daddy

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

filed a formal complaint for Uniform Domain Name Dispute Resolution with the Arbitration and Mediation Center of the World Intellectual Property Organization ("WIPO"). On January 3, 2005, the WIPO issued its administrative panel decision against Hostnut, finding "(a) that the Domain Names are confusingly similar to [Go Daddy's] common law rights in 'Daddy' in the line of commerce of domain name registration and website hosting, (b) that [Hostnut] has no rights or legitimate interest in the Domain Names and (c) that [Hostnut] registered and used the Domain Names in bad faith." Dkt. #40. The WIPO panel ordered Hostnut to transfer all its domain names to Go Daddy.

On January 10, 2005, Hostnut filed this breach of contract claim against Go Daddy and Wild West Domains, Inc ("Defendants"). Dkt. #1. Defendants filed a counterclaim for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), trademark infringement, trademark dilution, and unfair competition. Dkt. #10. The parties then filed various motions that were decided by the Court. *See* Dkt. ##29, 30.

On September 28, 2005, the Court held a Rule 16 case management conference and established a litigation schedule, including a March 31, 2006 deadline for completing discovery. Dkt. ##28, 31. The parties were advised during the conference that the Court would enforce the litigation deadlines, and the resulting Case Management Order, which included the discovery deadline, contained this warning:

> <u>The Deadlines Are Real</u>. The parties are advised that the Court intends to enforce the deadlines set forth in this Order, and should plan their litigation activities accordingly.

Defendants filed the present motion on April 27, 2006. Dkt. #40.[2]

---

[2] The parties filed a stipulation on April 17, 2006, to extend the discovery deadline. Dkt. #38. The Court denied the extension because the deadline had already passed and the parties did not establish "good cause" for the extension as required by Rule 16(b) of the Federal Rules of Civil Procedure. Dkt. #39.

- 2 -

## II. Exclusion of Hostnut Documents.

Hostnut submitted several documents to the Court in support of its opposition to Defendants' motion for summary judgment. Dkt. #43. Defendants ask the Court to exclude these documents because they were never produced in discovery.[3]

### A. The Rule 37 Sanction of Exclusion.

On December 6, 2005, Defendants served Hostnut with written discovery requests. Dkt. ##34, 35. Hostnut responded to Defendants' requests for admission on January 3, 2006, but provided no response to Defendants' detailed requests for production of documents. Dkt. #40. Defendants assert that the first time they received a copy of the allegedly breached contract and evidence of Hostnut's damages was in response to their motion for summary judgment. Dkt. #44. Defendants argue that Hostnut's failure to produce the documents in response to a valid Rule 34 request for production should result in exclusion of the evidence under Rule 37. Dkt. #40.

Rule 37(d) provides that a district court may sanction a party for failing to obey a Rule 34 request for production of documents by imposing any sanction authorized by Rule 37(b)(2)(A)-(C). Rule 37(b)(2)(B) permits the Court to enter an order "prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B).[4]

---

[3] Defendants also ask the Court to dismiss Hostnut's complaint as a sanction under Rules 16(f), 37, and 41(b). The Court will not address Defendants' request in light of its disposition of Defendants' summary judgment motion.

[4] Hostnut argues that Rule 37(d) does not apply to a failure to produce documents under Rule 34 because it refers only to "a request for inspection submitted under Rule 34" and not to a request for production. Dkt. #42 at 11. In describing the process for obtaining documents, however, Rule 34 states that a party may ask the other party "to produce and permit the party making the request . . . to *inspect* and copy any designated documents." Fed. R. Civ. P. 34(a) (emphasis added). Thus, Rule 37(d)'s reference to a "request for inspection" is consistent with the Rules' description of how documents are obtained under Rule 34. The Court accordingly concludes that Rule 37(d) authorizes sanctions for failure to comply with a Rule 34 request to produce. *See* WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D §2291 (Rule 37(d) applies to "the inspection of documents and things under Rule 34").

- 3 -

Hostnut admits that it did not timely produce documents or otherwise respond to Defendants' Rule 34 request.[5] Hostnut argues, nonetheless, that the documents should not be excluded because it "produced all of the relevant evidence in a previous proceeding, the Defendants did not follow the Court's Case Management Order to submit all discovery disputes to the Judge, and the Defendants cannot claim that they were prejudiced by . . . Hostnut's failure to produce the evidence." Dkt. #42. The Court does not agree.

On January 3, 2006, Hostnut's attorney informed Defendants that Hostnut would respond to the document production requests by week's end. Dkt. #41, ¶ 36. Hostnut did not produce the documents. Defendants' counsel wrote to Hostnut's counsel on January 30, 2006, asking that the requested documents be produced. *Id*. ¶ 37. The parties thereafter engaged in various oral communications, but Hostnut still did not produce the documents. Discovery closed on March 31, 2006 without Hostnut having responded in any manner to the Rule 34 request. Hostnut now explains its failure to comply with Rule 34 by stating that it had disclosed "all the relevant discovery" in the prior WIPO hearing. Dkt. #42. Rule 34, however, includes no exception for information previously disclosed, and Hostnut does not suggest that producing the requested documents in this case would have been an undue burden.

Hostnut argues that Defendants should have filed a motion to compel before seeking to exclude the documents, but an order compelling production is not a prerequisite to sanctions under Rule 37(d). As a leading commentator has observed, "[n]o court order is required to bring Rule 37(d) into play. It is enough that . . . a request for inspection has been properly served on the party." WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2291.

---

[5] Hostnut did provide an initial disclosure statement pursuant to Rule 26(a), but it was a one-page document that contained virtually no information about Hostnut's claims. Dkt. #41, ¶ 29. Hostnut does not contend that the initial disclosure included the documents later requested by Defendants under Rule 34.

- 4 -

1  Rule 37(d) authorizes the Court to impose such sanctions "as are just." The Court
2 concludes that Hostnut's complete disregard of its obligations under Rule 34 requires
3 exclusion of the documents that should have been produced under that rule. The discovery
4 rules would quickly become meaningless if parties could ignore them altogether, waiting to
5 reveal relevant information only when necessary to counter a motion for summary judgment.
6 Hostnut is represented by counsel who understands the Federal Rules of Civil Procedure.
7 Hostnut does not claim that Defendants' Rule 34 request was unclear, oppressive, or
8 otherwise objectionable. The Court clearly warned Hostnut at the case management
9 conference on September 28, 2005 and in the Case Management Order that the discovery
10 deadlines were real and would be enforced. Dkt. ##28, 31. Given these circumstances, the
11 Court concludes that exclusion of the untimely-disclosed documents is a just and appropriate
12 sanction.

13  **B.  Violation of the Case Management Order.**

14  Hostnut's evidence will also be excluded because Hostnut violated the Court's Case
15 Management Order. Dkt. #31. That order set a deadline for completing fact discovery of
16 March 31, 2006. Dkt. #31. The evidence Hostnut now seeks to use was not disclosed until
17 May 30, 2006, more than two months afer the discovery deadline. In effect, Hostnut asks the
18 Court retroactively to extend the discovery deadline by two months.

19  Rule 16 case management schedules "shall not be modified except upon a showing
20 of good cause[.]" Fed. R. Civ. P. 16(b). This "good cause" standard primarily considers the
21 diligence of the party seeking the extension. *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d
22 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule 'if it cannot
23 reasonably be met despite the diligence of the part[y] seeking the extension.'" *Id*. (quoting
24 Fed. R. Civ. P. 16 advisory committee notes (1983 Am.)).

25  Hostnut has made no effort to show that the discovery deadline could not have been
26 met through diligence on its part. Hostnut does not contend that the documents were
27 unavailable or their production burdensome. Because Hostnut has failed to show good cause
28

- 5 -

1   for extending the discovery deadline, the deadline will not be extended and Hostnut's
2   disclosures are untimely.

3         "In these days of heavy caseloads, trial courts . . . set schedules and establish
4   deadlines to foster the efficient treatment and resolution of cases." *Wong v. Regents of the*
5   *Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). "Parties must understand that they will
6   pay a price for failure to comply strictly with scheduling and other orders, and that failure
7   to do so may properly support severe sanctions[.]" *Id.* "As the torrent of civil and criminal
8   cases unleashed in recent years has threatened to inundate the federal courts, deliverance has
9   been sought in the use of calendar management techniques. Rule 16 is an important
10  component of those techniques." *Johnson*, 975 F.2d at 611. Hostnut's documents will be
11  excluded because it failed to comply with the Case Management Order entered under Rule
12  16. *See* Fed. R. Civ. P. 16(f).

13  **III.   Summary Judgment.**

14        Summary judgment is appropriate if the evidence, viewed in the light most favorable
15  to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and
16  that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
17  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might
18  affect the outcome of the suit . . . will properly preclude the entry of summary judgment."
19  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be
20  "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

21        Summary judgment may be entered against a party who "fails to make a showing
22  sufficient to establish the existence of an element essential to that party's case, and on which
23  that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, a
24  party opposing summary judgment "may not rest upon the mere allegations or denials of [the
25  party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue
26  for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
27  U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.
28  1995); *see also* LRCiv 56.1(a) ("Any party opposing a motion for summary judgment must

1  . . . set[] forth the specific facts, which the opposing party asserts, including those facts which
2  establish a genuine issue of material fact precluding summary judgment in favor of the
3  moving party.").

### A. Plaintiff's Breach of Contract Claim.

Hostnut opposes summary judgment on its breach of contract claim primarily by relying on the documents not disclosed in discovery. Because those documents have been excluded under Rules 16(f) and 37(d), they cannot be used to defeat summary judgment.

Hostnut also submits an affidavit of John Latour. Dkt. #43, Ex. A. Although this affidavit has not been excluded (and would not be, because Mr. Latour was disclosed in Hostnut's Rule 26(a) disclosure and Defendants never sought to depose him), the affidavit says nothing about the merits of Hostnut's breach of contract claim. The affidavit merely asserts that the documents excluded above were disclosed in the WIPO proceeding. It provides no facts in support of Hostnut's claim.

Because Hostnut's documents have been excluded and the Latour affidavit otherwise fails to support its claim, Hostnut has failed "to make a showing sufficient to establish the existence of an essential element of [its] case on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Summary judgment will therefore be granted on Hostnut's breach of contract claim.

### B. Defendant's Counterclaim.

Defendants seek summary judgment on their counterclaim for declaratory and injunctive relief under the ACPA, the Lanham Act, and the common law. Dkt. #10. Defendants rely primarily on the WIPO decision to support their motion.

The Court will take judicial notice of the undisputed fact that the decision was issued and found in favor of Defendants, but will not take judicial notice of the truth of the WIPO's findings of fact. *See Compana v. Aetna*, 2006 WL 1319456 at *3 (W.D.Wash. 2006). Because Defendants otherwise have failed to present undisputed facts from which the Court can conclude that they are entitled to judgment as a matter of law, summary judgment on their counterclaims will be denied.

**IV.    Legal Fees.**

Hostnut seeks attorney's fees for Defendants' alleged submission of a bad faith affidavit under Rule 56(g). Dkt. #42. The Court will deny Hostnut's request because there is no evidence of bad faith.

Defendants request attorney's fees and costs pursuant to Rule 37. The Court will deny this request because the Rule 37 sanction of exclusion is sufficient.

**V.    Trial.**

Trial will concern Defendants' counterclaims. The Court will schedule a Final Pretrial Conference by separate order. For purposes of preparing for trial, the documents called for by Defendants' Rule 34 requests have been excluded. The Court has not, however, excluded evidence which Hostnut or Defendants either disclosed in discovery or were not obligated to disclose.

**IT IS SO ORDERED:**

1. Defendants' Motion for Summary Judgment or Alternatively Motion to Dismiss Based Upon Failure of Plaintiff and Third-Party Defendant to Provide Discovery (Dkt. #40) is **granted in part and denied in part** as set forth above

2. The Court will schedule a Final Pretrial Conference by separate order.

DATED this 6th day of September, 2006.

_____
David G. Campbell
United States District Judge